Connie R. BARRETT, Appellant,

v.

STATE of Alaska, Appellee.

No. 2299.

Supreme Court of Alaska.

Dec. 31, 1975.

For Opinion on Rehearing Feb. 23, 1976.
See 546 P.2d 161.

Brian Shortell, of Bookman, Bryner & Shortell, Anchorage, for appellant.

Stephen G. Dunning, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BURKE and BOOCHEVER, JJ.

CONNOR, Justice.

Connie Barrett was indicted on February 23, 1971, for the sale of marijuana, amounting to one or two ounces, to an undercover police officer. She pleaded guilty, and an order was entered December 6, 1971, deferring sentence and placing her on probation until June 6, 1975. She was 20 years of age when she entered her plea. The state had recommended that she receive a two-year suspended imposition of sentence. A petition to revoke probation was filed April 2, 1973. On September 21, 1973, after Barrett admitted the allegations of the petition, she was sentenced to ten years imprisonment, with six years suspended and four years to serve. This was amended on November 2, 1973, to provide for a suspended sentence of ten years, with five years on probation.

In June of 1974 Barrett moved to vacate her 1971 conviction on the ground that her 1971 plea was invalid in that she was not

fully advised of the consequences of that plea. From a denial of her motion to vacate the 1971 plea, Barrett now appeals.[1]

The record reflects that Barrett appeared in court with counsel on October 15, 1971, in order to change her plea from not guilty to guilty. The change of plea had been the subject of negotiations between Barrett and the State. The substance of the negotiations was placed before the court. The court inquired whether any promises, threats or inducements had led to the plea, and Barrett replied that there were none. The court advised her of the maximum possible sentence, that the court was not bound by the terms of the negotiations between prosecution and defense, and that she was entitled to a jury trial. Barrett indicated that she understood the court's advice. The court asked Barrett to tell in her own words how the sale occurred. After some initial vagueness, she related the circumstances of the sale in considerable detail. The court accepted the plea of guilty.

## I

Barrett asserts that the procedure by which her plea was taken on October 15, 1971, did not comply with Rule 11, Alaska Rules of Criminal Procedure. At the time the plea was entered the rule provided in pertinent part that:

> "A defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and shall not accept such plea without first determining that the plea is made voluntarily with understanding of the nature of the charge. . . . The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

We have interpreted this rule in a manner to bring it into conformity with Rule 11, Federal Rules of Criminal Procedure. *Ingram v. State,* 450 P.2d 161 (Alaska

1969); *Tafoya v. State,* 500 P.2d 247, 249, 250 (Alaska 1972). Barrett argues that under the interpretation of Rule 11 set forth in *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), her plea is deficient because she was not advised of her privilege against self-incrimination or her right of confrontation and cross-examination, and because the record fails to show a waiver of those rights.

We think that Barrett's reliance on *McCarthy v. United States, supra,* is misplaced. That opinion does require that a court in accepting a plea of guilty must address the defendant personally to ascertain that he understands the nature of the charge and the consequences of his plea. To this end the court should examine the relation between the law and the acts committed to assure that the defendant's plea is entered with an understanding of the nature of the charge against him.

In *McCarthy,* an income tax evasion case, the court accepted a plea of guilty upon the representation of defense counsel that he had advised the defendant of the consequences of the plea. The court then asked the defendant himself if he desired to plead guilty, understood that such a plea waived the right to jury trial, and subjected him to a fine and imprisonment, to which the defendant replied that he did understand those consequences. The defendant, in response to questions from the court, also stated that his plea was not the product of any threat or promises, and that it was entered of his own volition. However, at a later sentencing hearing, the defense attorney asserted that the defendant's evasion of taxes resulted from neglectful and inadvertent behavior rather than from criminal intent. He moved to suspend the sentence, which the court denied.

In reversing the conviction in *McCarthy,* the United States Supreme Court emphasized that the trial judge should have satisfied himself, by personally addressing the

---

1. On August 1, 1974, upon the recommendation of the probation officer, the petition to revoke Barrett's probation was dismissed. Her probation was terminated for the reason that she had complied with all of the special conditions thereof.

defendant, that there was a factual basis for the plea. Because this was lacking in *McCarthy,* the plea was held to be invalid.

By contrast, in the case at bar the trial court did address the defendant personally, as a result of which Barrett indicated in great detail the facts giving rise to the charge. The essence of those facts was that she voluntarily sold marijuana to an undercover agent. The dictates of Rule 11 were in this respect satisfied.

Barrett complains, however, that the trial court did not advise her of her privilege against self-incrimination, her right of confrontation of the witnesses against her, and the right to cross-examine those witnesses. She asserts that under *McCarthy v. United States, supra,* it is necessary that the record show a recital of these rights, and a conscious understanding and waiver of them by the defendant. She argues that failure by the court to cover these matters invalidates the plea.

 It is true that the court in *McCarthy* mentioned self-incrimination, the right to confrontation, and the right to cross-examination as being waived upon the entry of a plea of guilty. But those subjects were mentioned in the context of the court's discussion of why it is important that the record contain sufficient information to assess whether the defendant understands the nature of the offense and is entering a voluntary plea. Nothing in the *McCarthy* opinion requires that the trial judge embark upon a recital of those topics and obtain a specific waiver or statement by the defendant that he understands each one of them. What matters is that the record, taken as a whole, must show an understanding of the nature of the offense charged and a voluntary plea. Our previous opinions in Alaska require no more. As we observed in *Tafoya v. State, supra,* at 250:

> "[A]n accused need not be informed about every conceivable collateral effect the conviction might have prior to the acceptance of a plea of guilty." *See, id.,* at 251.

Although *Tafoya* involved a consequence (deportation) more speculative than the waiver of trial rights inherent in Barrett's guilty plea, we find no reason to require recitation of all the trial rights so waived any more than recitation of all collateral consequences of that plea and subsequent conviction. A complete catalog would be very cumbersome; to some extent it would always be incomplete. Furthermore, it is doubtful that for many defendants it would be completely comprehensible. Thus to impose such a requirement would merely lead to confusion, not clarity in determining the ultimate question: whether on the record as a whole the plea appears to be voluntarily and intelligently made.[2]

In the case at bar there can be no question that the defendant knew what she was doing when she pleaded guilty. The facts which she recited make out the simple elements of a sale of marijuana, and there is nothing in the record which would indicate that the plea was involuntary.

## II

Barrett asserts that the failure of the trial court to cover the subjects of compulsory self-incrimination and confrontation of witnesses results in a denial of due process of law, thus rendering her plea void. She places reliance on *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In that case the defendant pleaded guilty to five indictments charging him with common-law robbery, and was sentenced to death. The record did not show that the judge ever asked any questions of the defendant at the time of his plea, and the defendant at no time addressed the court. It was this total absence of any showing that the plea was voluntary that led to reversal of the state court conviction on due process grounds. *Boykin* stands for the proposition that a voluntary plea cannot be presumed from a silent record.

2. *Cooksey v. State,* 524 P.2d 1251, 1256 (Alaska 1974).

In the course of the *Boykin* opinion, Mr. Justice Douglas noted that a guilty plea involved waiver of important constitutional rights, including the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. 395 U.S. at 243, 89 S.Ct. 1709. Some courts have interpreted *McCarthy v. United States, supra,* in conjunction with *Boykin* as requiring explicit coverage of these subjects in state criminal proceedings. *United States v. Escandar,* 465 F.2d 438, 441 (5th Cir. 1972); *People v. Jaworski,* 387 Mich. 21, 194 N.W.2d 868 (1972); *In re Tahl,* 1 Cal.3d 122, 81 Cal.Rptr. 577, 460 P.2d 449, 456 (1969), *cert. denied,* 398 U.S. 911, 90 S.Ct. 1708, 26 L.Ed.2d 72 (1970); *Higby v. Sheriff of Clark County,* 86 Nev. 774, 476 P.2d 959, 963 (1970); *State v. Guy,* 81 N.M. 641, 471 P.2d 675, 677 (1970); *Nachtigall v. Erickson,* 85 S.D. 122, 178 N.W.2d 198, 201 (1970); *State v. Abodeely,* 179 N.W.2d 347, 352 (Iowa 1970).[3]

It should be noted that all but two of these cases were apparently decided by courts which did not have an opportunity to consider the opinion rendered in *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). In that case the court explains that:

"[t]he new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." 397 U.S. at 747-48 n. 4, 90 S.Ct. at 1468.[4]

In one post-1970 case cited by appellant, *People v. Jaworski, supra,* the court merely noted that the intermediate appellant court, which it reversed, had relied upon the *Brady* case, but the *Jaworski* opinion is devoid of any discussion of *Brady.* Instead the opinion fastens upon the language of *Boykin* concerning waiver of constitutional rights, and construes *Boykin* as requiring an enumeration of those rights at the time of plea. It does not appear that the *Jaworski* court considered the effect of the *Brady* decision.

The other post-1970 case relied upon by appellant is *United States v. Escandar,* 465 F.2d 438 (5th Cir. 1972). The court there did not cite or discuss the *Brady* case. Indeed it had little occasion, to *Escandar* did not concern a plea of guilty but a claim that a defendant who testified at his own trial should have been given the warnings and inquiries by the court which are contemplated by Rule 11, Fed.R.Crim.P. In rejecting that claim it was not necessary for the court to consider the impact of the *Brady* case. We do not view *Escandar* as helpful in interpreting the *Boykin* case in regard to the voluntariness of pleas.

Various federal courts of appeal have interpreted the *Brady* opinion as restricting the scope of *Boykin.* As the court stated in *Stinson v. Turner,* 473 F.2d 913, 915 (10th Cir. 1973):

"We feel that *Boykin* imposed only that requirement of an affirmative record showing of a voluntary and intelligent plea. The remainder of the opinion does expressly discuss the three enumerated constitutional rights. We feel, however, that these rights were set out to demonstrate the gravity of the trial court's responsibility, but that no procedural requirement was imposed that they be enumerated."[5]

We find persuasive the holdings in *United States v. Gearin,* 496 F.2d 691 (5th Cir. 1974), and *United States v. Frontero,* 452 F.2d 406 (5th Cir. 1971). Those cases read the *Boykin* and *Brady* cases together as not

---

3. *See McKinnon v. State,* 526 P.2d 18, 26 & n. 25 (Alaska 1974). In *McKinnon* we expressly refused to decide whether noncompliance with the new Rule 11 (*see* note 7, *infra*) would "automatically vitiate a plea." Of course, Barrett's plea was accepted before the new version of Rule 11 was promulgated. We noted in *McKinnon* that the cases split on

whether *Boykin* constitutionalized the new Rule 11 standard.

4. *See also North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

5. *Accord, Wilkins v. Erickson,* 505 F.2d 761 (9th Cir. 1974); *United States v. Sherman,* 474 F.2d 303 (9th Cir. 1973).

requiring an incantation of specifice constitutional rights in order for a plea of guilty to be valid under the due process clause. What matters is whether from the totality of circumstances surrounding the plea it can be determined that the plea was voluntarily and intelligently made. In *United States v. Frontero, supra,* the court noted that if enumeration of every right which is waived by a plea of guilty is required for a valid plea, then logically,

> "the court, before accepting a guilty plea, would be required to inform a defendant of his right to a speedy and public trial, his right to an impartial jury, his right to compulsory process for obtaining witnesses, his right to be free from cruel and unusual punishment, his right to be free from unreasonable searches and seizures, his right to have excluded from the trial any evidence illegally seized, and many more. We do not read Rule 11 as requiring this; nor do we feel that due process requires this." 452 F.2d at 415.

We are similarly persuaded.[6] We hold that in the case at bar Barrett was afforded due process in connection with the entry of her plea.

Because we have held Barrett's plea valid under Rule 11, Alaska Rules of Criminal

Procedure, and can perceive no constitutional infirmity in the procedure which led to her conviction, we affirm the superior court.[7]

Affirmed.

---

6. We are aware of Justice Douglas' belief that his opinion in *Boykin* required enumeration of not only the three rights listed, but also others including the rights to a speedy trial and the "beyond a reasonable doubt" standard of proof. *Johnson v. Ohio,* 419 U.S. 924, 95 S.Ct. 200, 42 L.Ed.2d 158 (1974) (Douglas, J., dissenting from a denial of certiorari, joined by Brennan and Marshall, JJ.). We are fortified by the denial of certiorari in that case, however, in the belief that a majority of the United States Supreme Court would not so hold. We agree with the federal Fifth and Tenth Circuits in our interpretation of constitutional law, and disagree with various commentators who believe that *Boykin* does require a specific enumeration of rights. *See* ABA Standards, The Function of the Trial Judge 4.2 (Approved Draft 1972) ; *Id.,* Pleas of Guilty 1.4 (Approved Draft, 1968) ; Uniform Rules of Criminal Procedure 444 (b) (1) (iv) (1974).

7. It should be noted that Alaska Crim.R. 11 (c) (2) now provides that the court must address the defendant personally and inform him "that by his plea of guilty . . . he waives his right to trial by jury or trial by a judge and the right to be confronted with the witnesses against him". Thus under the current rule, Barrett's plea should not have been accepted without further questioning by the trial judge.

 In light of widespread belief that judicial enumeration of a defendant's rights upon offering a guilty plea is highly desirable, (ALI, A Model Code of Pre-Arraignment Procedure, Tent.Draft No. 5 (1972), Comment to § 350.4 ; *see* note 6, *supra*) we will refer Criminal Rule 11 to the Standing Advisory Committee on Criminal Rules for consideration of whether the trial judge's duties should be broadened, as a matter of policy, through further amendment.