Donald A. MORGAN, Appellant,

v.

STATE of Alaska, Appellee.

No. 2894.

Supreme Court of Alaska.

July 21, 1978.

Stephanie J. Cole and Saul R. Friedman, Rice, Hoppner & Hedland, Anchorage, for appellant.

Charles M. Merriner, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

RABINOWITZ, Justice.

Appellant Donald Morgan was indicted, in a two-count indictment, for the crimes of escape[1] and first degree murder.[2] Prior to trial, Morgan moved to withdraw his not guilty pleas to both counts. The motion was granted by the superior court. Morgan then pled guilty to both counts and was sentenced to life imprisonment upon his conviction of first degree murder. The superior court's judgment and commitment further provided that Morgan "shall be required to serve a minimum of 35 years in custody before he shall be eligible for parole and in any event parole shall not be granted unless the parole board can reasonably believe that the defendant has ceased to be a danger to the community." As to the crime of escape, Morgan was given a three year sentence which was made to run concurrently with the life sentence.

After imposition of sentence, Morgan timely moved, pursuant to Criminal Rule 35(a),[3] to modify his sentence. This motion was denied by the superior court. Morgan then filed a motion, pursuant to Criminal Rules 11(d) and 32(d),[4] to withdraw the

---

1. AS 11.30.090(1) provides at the time the offense was committed:

 A person who escapes or attempts to escape from the custody of a peace officer under a lawful arrest . . . is punishable,

 (1) if the custody . . . is by an arrest on a charge of a felony, or conviction of a felony, by a fine of not more than $5,000, or by imprisonment for not less than one year nor more than three years, or by both . . .

2. In regard to the crime of first degree murder, AS 11.15.010 states:

 A person who, being of sound memory and discretion, purposely, and either of deliberate and premeditated malice or by means of poison, or in perpetrating or in attempting to perpetrate, rape, arson, robbery, or burglary kills another, is guilty of murder in the first degree, and shall be sentenced to imprisonment for not less than 20 years to life.

 Concerning the first degree murder charge, Count II of the indictment reads, in part:

 That on or about the 8th day of September, 1975, at or near Anchorage, in the Third Judicial District, State of Alaska, Donald Andrew Morgan, being of sound memory and discretion, did unlawfully, feloniously, purposely, and while perpetrating the crime of burglary not in a dwelling, kill Jonathan Flora by shooting the said Jonathan Flora with a firearm.

3. Criminal Rule 35(a) provides:

 The court may correct an illegal sentence at any time. The court may reduce a sentence within 60 days after the sentence is imposed, or within 60 days after the receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 60 days after receipt of an order of the supreme court of the state or of the United States denying an application for relief.

4. Criminal Rule 11(d) provides:

 (d) *Insuring That the Plea is Voluntary.* The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire of the prosecuting attorney, defense counsel and the defendant himself to determine whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the state and the defendant or his attorney. Criminal Rule 32(d) reads, in part:

 (1) The court shall allow the defendant to withdraw his plea of guilty . . . whenever the defendant, upon a timely motion for withdrawal, proves that the withdrawal is necessary to correct manifest injustice.

 . . . . .

 (ii) Withdrawal is necessary to correct a manifest injustice whenever the defendant demonstrates that:

guilty pleas he had previously entered to the homicide and escape charges. In support of this motion to withdraw, Morgan alleged that he had been denied effective assistance of counsel; that the guilty pleas were entered without adequate knowledge of the charges;[5] that the pleas were entered without knowledge that the sentence actually imposed could be imposed;[6] that the superior court failed to comply with the requirements of Criminal Rule 11(c) before accepting the guilty pleas;[7] that the superior court failed to comply with *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); that the superior court did not adequately advise him of his rights; that the superior court did not undertake to determine his competency to plead to the charges; that there was no factual basis for the pleas; and that the indictment was insufficient.[8] After hearing oral argument on the motion to withdraw, the superior court issued a memorandum decision in which it denied Morgan's Rule 32(d) motion. Morgan thereafter filed a motion which was captioned "Motion to Reconsider and Renewed Motion to Hold an Evidentiary Hearing."[9] The superior court subsequently entered an order denying the motion to reconsider in its entirety. This appeal followed.

Morgan has advanced four specifications of error in which he asserts that the superior court erred in denying the motion to withdraw his guilty pleas. In addition, Morgan has appealed the sentence imposed on the ground that it is excessive. Initially, we will address two relatively minor specifications of error before treating the major issues in this appeal.

■ In one of his specifications of error, Morgan asserts that the superior court failed to make a mandatory determination that he was competent to waive his constitutional rights and plead guilty. Morgan bottoms his argument upon *Sieling v. Eyman,* 478 F.2d 211 (9th Cir. 1973). Morgan contends that this court should adopt the holding of *Sieling* which requires that the trial court's inquiry, in making a determination whether a defendant is voluntarily and intelligently entering a guilty plea, must differ in those cases where a substantial question of the defendant's mental capacity has arisen. In such instances, *Sieling* requires that the trial court determine whether or not a mental illness has substantially impaired the accused's ability to make a reasoned choice among the alternatives presented to him and to understand the nature of the consequences of his plea.

Morgan concedes that, prior to the entry of his guilty pleas, he was examined by three psychiatrists on the issue of his criminal responsibility for the first degree homicide. Nevertheless, Morgan contends that since none of the psychiatrists addressed

---

 (aa) He was denied the effective assistance of counsel guaranteed to him by constitution, statute or rule, or

 . . . . .

 (cc) The plea was involuntary, or was entered without knowledge of the charge or that the sentence actually imposed could be imposed . . . .

**5.** *Id.*

**6.** *Id.*

**7.** In regard to guilty pleas, Criminal Rule 11(c) provides:

 The court shall not accept a plea of guilty . . . from a defendant without first addressing the defendant personally and
 (1) determining that he understands the nature of the charge; and
 (2) informing him that by his plea of guilty . . . he waives his right to trial by jury

or trial by a judge and the right to be confronted with the witnesses against him; and
 (3) informing him:
 (i) of the mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered, and
 (ii) that the defendant has the right to plead not guilty or to persist in that plea if it has already been made, or to plead guilty.

**8.** It is apparent from the grounds advanced that the bulk of the asserted errors pertained to the first degree murder conviction, not to the escape conviction.

**9.** Prior initially to ruling upon Morgan's Rule 32(d) motion, the superior court did not hold an evidentiary hearing. As noted above, the trial court did hear oral argument from respective counsel before denying the motion to withdraw the guilty pleas.

the question of his competency to plead guilty, he should have been afforded an evidentiary hearing on this question under *Sieling*.[10]

The state counters by noting that at no time prior to the entry of the questioned pleas did Morgan assert that he lacked the mental capacity to plead to the charges nor did Morgan present any evidence of his incompetency "by means of an evidentiary hearing, affidavits, or otherwise." The state further argues that this court should follow the majority rule, reject *Sieling*, and hold that the competency to stand trial test is the same as the competency to plead standard.

We have concluded that there is no merit in this specification of error. We note that the psychiatrists who examined Morgan, before his pleas were accepted, specifically found that he was capable of understanding the nature of the charges against him and of cooperating with his attorney in the preparation of his defense. The superior court specifically found that Morgan, at the time his pleas were entered

> was competent to plead guilty and did not suffer from a mental illness that substantially impaired his ability to make a reasoned choice among possible alternatives and to understand the nature of the consequences of his plea.[11]

As to these findings and conclusions, we think there is ample evidentiary support in the record. Further, we think there is considerable merit in the state's position that the instant specification of error should be rejected on the merits because of the appellant's failure to assert his mental incompetence prior to the entry of the guilty pleas and the absence of any evidence as to incompetency.[12]

■ Morgan has also specified as error the superior court's denial of his motion to withdraw his guilty pleas on the ground that he was denied the effective assistance of counsel under both the federal and Alaska constitutions.[13] Morgan advances three lines of argument in support of his assertion that he was denied effective assistance of counsel. First, Morgan argues that his trial attorney failed to move to dismiss the first degree murder count on the ground that the indictment was fatally deficient since it did not contain factual allegations as to the burglary not in a dwelling sufficient to allege felony murder.[14] Second, Morgan contends he was denied effective assistance of counsel in that his trial counsel failed to explain the elements of the offense of felony murder to him. Third, Morgan takes the position that his trial attorney's failure to advise him that the

10. In support of his contention that a substantial question as to his mental competency had in fact arisen, appellant points to the fact that he had successfully raised the defense of not guilty by reason of insanity in a prior criminal case. *See Morgan v. State,* 512 P.2d 904 (Alaska 1973).

11. From this portion of the superior court's opinion, it is apparent that the court applied the criteria of *Sieling.* Few courts have approved the *Sieling* approach and we note that we are disinclined to adopt separate tests for determination of competence to plead and competency to stand trial. *See* Note, *Competence to Plead and the Retarded Defendant: United States v. Masthers,* 176 U.S.App.D.C. 242, 539 F.2d 721 (1976), 9 Conn.L.Rev. 176, 185 (1976).

12. We also think it of some significance that Morgan's attorney throughout the plea proceedings did not voice any doubts as to his client's competence. *See McKinney v. State,* 566 P.2d 653, 660, *opinion on rehearing,* 570 P.2d 733 (Alaska 1977); *Fajeriak v. State,* 520

P.2d 795, 802–03 (Alaska 1974). In the latter case, we said:

> Great deference is to be accorded defense counsel's assessment in [competency] matters, insofar as he is better able than the trial judge or the prosecutor to assess the defendant's ability to participate in his defense and to understand the nature of the proceedings against him. (footnote omitted)

*Id.*

13. The Sixth Amendment to the United States Constitution provides, in part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." Section 11 of Article I of the Alaska Constitution reads, in part: "In all criminal prosecutions, the accused shall have the right . . . to have the assistance of counsel for his defense."

14. *See* note 2, *supra,* for the text of Count II of the indictment.

sentence which the superior court imposed as to his first degree murder conviction could have been imposed constituted ineffective assistance of counsel.[15]

In *Risher v. State*, 523 P.2d 421, 423–25 (Alaska 1974), we articulated the criteria against which claims of ineffective assistance of counsel are to be evaluated. In *Risher*, we quoted with approval the following statement from *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir. 1974):

> Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

Study of the record in this case has led us to the conclusion that appellant has failed to make out a case of ineffective assistance under the standards of *Risher*.

We reach this conclusion for the following reasons: Morgan accurately cites *Adkins v. State*, 389 P.2d 915, 916 (Alaska 1964), for the proposition, "[b]y the weight of authority an indictment for burglary must specify by name the ulterior crime which it is alleged the accused intended to commit." Nevertheless, this court has not as yet spoken as to the question of the requisite degree of specificity with which the crime of burglary must be alleged when the crime is a component element of the

offense of felony murder. Given the direction of those post-*Adkins* decisions in which we addressed sufficiency of indictment issues, a strong argument can be made that the burglary aspects of the felony murder count of the indictment were sufficient to give Morgan adequate notice of the charge, as well as protection against double jeopardy.[16] But even assuming arguendo that the indictment was defective, Morgan's trial counsel's failure to move for its dismissal is not reflective of professional performance below the standard mandated by *Risher*. Here review of the record demonstrates that the state had more than an adequate evidentiary basis for reindicting Morgan and thus obtaining an indictment sufficient on its face.[17] Given the foregoing, and the fact that Morgan's trial counsel obtained "significant concessions" from the prosecution in a plea bargain context,[18] we cannot characterize defense counsel's failure to move to dismiss the indictment as tantamount to ineffective assistance of counsel.

██ As mentioned earlier, Morgan takes the further position that his trial counsel's alleged failure to explain the elements of the offense of felony murder, as well as his alleged failure to advise him that the sentence actually imposed on the first degree murder charge could have been imposed, denied him the effective assistance of coun-

---

**15.** As noted at the outset, the superior court sentenced Morgan to life imprisonment with eligibility for parole after he had served 35 years. Concerning the granting of parole in general, AS 33.15.080 provides, in part:

> However, no prisoner may be released on parole who has not served at least one-third of the period of confinement to which he has been sentenced, or in the case of a life sentence, has not served at least 15 years.

Regarding the sentencing court's authority to fix parole eligibility, AS 33.15.230(a) provides:

> *Fixing eligibility for parole at time of sentencing.* (a) Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and the best interests of the public require that the defendant be sentenced to imprisonment for a term exceeding one year, may
>
> (1) designate in the sentence of imprisonment imposed a minimum term at the expira-

tion of which the prisoner is eligible for parole, which term shall be at least one-third of the maximum sentence imposed by the court . . . . .

**16.** *See Amidon v. State,* 565 P.2d 1248, 1252–53 (Alaska 1977); *Peterson v. State,* 562 P.2d 1350, 1367 (Alaska 1977); *Thomas v. State,* 522 P.2d 528, 530 (Alaska 1974).

**17.** We think appellant's argument that in the case at bar it cannot be assumed that the state would be motivated to reindict or that the grand jury would have returned an indictment is unrealistic in light of the gravity of the crime and the strength of the evidence which was available to the prosecution.

**18.** Among other concessions, four armed robbery charges were not pursued as part of the plea negotiations in the case.

sel. We think it of controlling significance that Morgan fell short of meeting his burden of proof by virtue of the fact that he presented no evidence by way of affidavits, testimony or otherwise in support of his contention that his trial counsel. did not advise him on these subjects.[19] Given the absence of any showing relating to his trial attorney's purported failures, we conclude that the superior court did not err in failing to grant Morgan's motion to withdraw his guilty pleas on the ground of ineffective assistance of counsel.[20]

We now turn to Morgan's specification of error in which he alleges that he was denied due process of law because of the superior court's rejection of his motion to withdraw his guilty pleas. Appellant urges two lines of argument in support of this specification of error. The two grounds advanced are that Morgan lacked adequate notice of the constitutional rights he was waiving by pleading guilty and lacked adequate notice of the nature of the felony murder charge.

■ As to the first ground advanced, Morgan centers his argument on the superior court's failure to advise him of his privilege against compulsory self-incrimination. Morgan places reliance on *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), contending that *Boykin* stands for the proposition that a waiver by the accused of his privilege against self-incrimination cannot be presumed from a silent record. We think *Barrett v. State,* 544 P.2d 830, 832–34 (Alaska 1975), is dispositive of this contention. In that case, *Barrett,* relying on *Boykin,* asserted that the failure of the trial court to cover the subjects of compulsory self-incrimination and confrontation of witnesses resulted in a denial of due process of law, thus rendering

her plea void. After analyzing *Boykin,* we noted that in a later opinion, *Brady v. United States,* 397 U.S. 742, 747–48 n. 4, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970), the Supreme Court explained:

> The new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily.

Then, in rejecting *Barrett's* due process argument, we stated:

> We find persuasive the holdings in *United States v. Gearin,* 496 F.2d 691 (5th Cir. 1974), and *United States v. Frontero,* 452 F.2d 406 (5th Cir. 1971). Those cases read the *Boykin* and *Brady* cases together as not requiring an incantation of specific constitutional rights in order for a plea of guilty to be valid under the due process clause. What matters is whether from the totality of circumstances surrounding the plea it can be determined that the plea was voluntarily and intelligently made.[21]

Since we have determined that the record supports the conclusion that Morgan entered the questioned guilty pleas voluntarily and intelligently, we hold that Morgan was afforded due process in connection with the entry of his plea.[22]

■ Beginning with the premise that a plea must be intelligently and voluntarily made to satisfy the requirements of due process of law, Morgan states that he was denied this constitutional right because he lacked adequate notice of the nature of the charge against him. More particularly, Morgan complains that the superior court did not explain the elements of felony murder, "which is highly intricate and unusual

19. In this regard, the state points out, "Morgan even resisted an evidentiary hearing by contending that such a hearing would deny him constitutional rights."

20. Inherent in our conclusion is our determination that the superior court's denial of Morgan's motion for reconsideration and renewed motion to hold an evidentiary hearing should be affirmed. In this regard, we think it sufficient to note that the motion was unaccompanied by any affidavit pertaining to those mat-

ters as to which Morgan's trial counsel purportedly failed to advise him.

21. *Barrett v. State,* 544 P.2d 830, 833–34 (Alaska 1975).

22. In our later discussion of Morgan's Criminal Rule 11 specification of error, we will return to the subject of the "totality of circumstances surrounding the plea."

in light of Alaska's unique requirement that one must have an intent or purpose to kill" and did not explain the elements of burglary. In response, the state relies heavily upon the facts which appear in the record and, in particular, upon Morgan's confession. The state takes the view that it is an inescapable conclusion from the record that Morgan broke into the building in order to steal something from within the building. In this regard, the state points to a portion of Morgan's confession where he states:

> Then I did go but I came back and broke the window. I was trying to get some methadone. Guess that's when I shot him.

Concerning the element of purposefulness, the state observes that Morgan told the police he aimed at the person who was killed.[23] The state also notes that Morgan resisted an evidentiary hearing until he filed his motion for reconsideration and that Morgan never demonstrated that his trial counsel did not advise him of both the purposefulness and theft elements of felony murder.

In addition to the foregoing, the record indicates that the following exchange took place between Morgan and the superior court at the change of plea proceedings:

> THE COURT: The . . . you've told me that you're guilty of these two offenses. Will you tell me how the offense—the charge of escape came about? What happened?
>
> MORGAN: I was taken out to see a dentist for some dental work, and the officer took the handcuffs off me, and left me there, and I just figured it wouldn't hurt any, I guess, to escape.
>
> THE COURT: And how about the murder charge?

> MORGAN: I was on drugs at the time it happened. For awhile I didn't think I was guilty of it, and after reading the statutes and looking at it, I decided I was.

We think the record belies Morgan's contention that he was so unaware of the nature of the felony murder charge that he was denied due process of law. Morgan assured the court on the record that he had discussed the subject of withdrawal of his not guilty pleas with his attorney and was satisfied that was the course of action he wished to pursue. The superior court read to Morgan the separate counts of the indictments and inquired whether he understood the charges. Morgan responded, "Yes, I do." Given the portions of the record we have alluded to, as well as those relied upon by the state, we think the state's arguments are more persuasive and thus hold that Morgan has not shown that he was denied due process of law because of a lack of adequate notice of the charges against him.[24]

Morgan next specifies as error the superior court non-compliance with the mandatory provisions of Criminal Rule 11(c) in accepting his guilty pleas.[25] In *Lewis v. State,* 565 P.2d 846 (Alaska 1977), a majority of this court decided not to adopt the rule of *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), which mandates that the failure of a federal trial court to follow the procedures specified in Rule 11(c), Federal Rules of Criminal Procedure, is *per se* reversible error. The majority in *Lewis* concluded that the consequences of the trial court's failure to comply with Alaska's parallel Rule 11 "would be better considered on a case-by-case ba-

**23.** The state also points out that when a psychiatrist asked Morgan what was on his mind at the time he fired, he said: "Jail—I think subconsciously I knew it was the police, even though I couldn't see a hat or badge."

**24.** In the case at bar, the sentencing took place approximately two months after Morgan pled guilty to the two counts. At the outset of the sentencing proceedings, the following transpired:

> THE COURT: . . . Mr. Morgan, since you were last in court have you had occasion to think about the plea you've entered in this case?
>
> MORGAN: Yes, I have.
>
> . THE COURT: And have you considered that that plea should still stand?
>
> MORGAN: Yes.

**25.** *See* note 7, *supra,* for the text of Criminal Rule 11(c).

sis." [26] Further, in *Lewis,* it was determined

> to treat violations of Criminal Rule 11(c) in the same manner as other errors not of constitutional dimension—reversible only if they affect substantial rights of the defendant.[27]

In *Lewis,* the state conceded that the record did not reflect compliance with Rule 11(c), but argued that the conviction should nevertheless be affirmed because the error was harmless. In rejecting the *per se* rule of *McCarthy,* we noted:

> When Lewis pleaded guilty, he was accompanied by an experienced criminal defense attorney who assured the court that he had discussed the plea with Lewis and that Lewis was pleading knowingly and competently. Yet his attorney never made known to the court his belief that the procedures of Rule 11(c) were not being followed. Had he done so, the trial court would have had the opportunity to correct the error at once, and the time and expense of this collateral proceeding might have been avoided. . . . The system of justice would be ill served by a rule which permitted defendants with skilled counsel to obtain automatic reversals long after the fact for errors which counsel presumably could have prevented merely by speaking up.[28]

In *Lewis,* we noted that a defendant who moves pursuant to Criminal Rule 32(d)(1) [29] must prove manifest injustice before withdrawal of a plea will be permitted. "He may not, merely by suggesting possible motives for a plea, shift to the state the burden of proving what was in his mind when he entered the plea." [30] In light of the record in *Lewis,* it was concluded:

> We can only speculate about the possible prejudice Lewis may have suffered, and its relationship to the violations of Rule 11(c). On this record, we have concluded that Lewis' substantial rights were not affected and that the error was, therefore, harmless.[31]

Applying the *Lewis* criteria and its analytical approach to the case at bar, we have concluded that Morgan's substantial rights were not affected and that any error on the superior court's part in not complying with the requirements of Rule 11(c) was, therefore, harmless.

■ Under this specification of error Morgan argues that he was not advised that he had the right to a trial by judge,[32] nor was he advised that he had the right to persist in his plea of not guilty.[33] We think there is little merit in these assertions. Study of the change of plea and the sentencing proceedings reveals that the superior court did clearly bring home to Morgan that he had the right not to plead guilty. The state concedes that the superior court did err in not informing Morgan that by his plea of guilty he waived his right to a court trial. On the other hand, the state takes the position that this error did not affect any of Morgan's substantial rights. We are in agreement with this position. There is not the slightest indication in the record

---

26. *Lewis v. State,* 565 P.2d 846, 851 (Alaska 1977).

27. *Id.* at 852 (footnote omitted). *See also Barrett v. State,* 544 P.2d 830 (Alaska 1975).

28. *Lewis v. State,* 565 P.2d 846, 852 (Alaska 1977) (footnote omitted).

29. *See* note 4, *supra,* for the text of Criminal Rule 32(d)(1).

30. *Lewis v. State,* 565 P.2d 846, 853 (Alaska 1977) (footnote omitted).

31. *Id.* at 853. Further, we noted:
> Lewis complains that the trial court violated Rule 11(c) by not questioning him concerning his understanding of the nature of the charges and the rights he was giving up, and not informing him of the maximum and minimum punishment provided by law. In his brief on appeal, he suggests that he may have pleaded guilty either to protect his brother, who had been named as a co-defendant, or to obtain entry into a drug treatment program. Yet he never actually asserts this as a fact. His motion to withdraw the plea is supported by no affidavits, from Lewis or anyone else, and he presented no oral testimony at the hearing on the motion.
> *Id.* at 852.

32. Criminal Rule 11(c)(2), note 7, *supra.*

33. Criminal Rule 11(c)(3)(ii), note 7, *supra.*

that the superior court's failure to so advise Morgan had any impact on his substantial rights and, thus, was harmless error.

■ Morgan further argues that he was not adequately advised under Rule 11(c)(3)(i) of the mandatory minimum and maximum possible punishment which could be imposed for the crime of felony murder. Rule 11(c)(3)(i) requires the trial court to inform the defendant personally

> of the mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered. . .

Concerning this aspect of the trial court's duties under Rule 11, the record shows that the following exchange took place between the superior court and Morgan at the change of plea proceedings:

> THE COURT: You realize that—do you know what the sentences—what sentences could be imposed in these cases?

MORGAN: Yes.

THE COURT: For instance, the first degree murder. Do you know what sentence could be imposed in that case?

MORGAN: Yes.

THE COURT: What is your understanding of that sentence?

MORGAN: Anywhere from 20 years to life.

THE COURT: All right. And for the escape?

MORGAN: Three.

THE COURT: This agreement says "The State does not oppose concurrent time to serve on the escape charge in the indictment. . . . [I]n other words, the State does not oppose this court imposing concurrent time for the escape and for the murder. But do you realize the court is not bound to impose a concurrent sentence?

MORGAN: Yes, I do.[34]

**34.** Morgan's pleas were entered pursuant to an agreement with the state which was reduced to writing. At the change of plea proceedings, Morgan acknowledged that his guilty pleas were entered pursuant to the agreement and when asked what his understanding of the agreement was, he had his counsel inform the court that he wished the entire memorandum of agreement read into the record. Morgan's trial counsel then read the following into the record:

> The State of Alaska, through its attorney, Stephen E. Branchflower, and Donald Andrew Morgan, through his attorney, Ronald Drathman, hereby document the following: One: It is understood and agreed that Donald Morgan will withdraw his not guilty plea as to the charge of First Degree Murder and Escape contained in case 75–199, Fairbanks, and substitute a guilty plea as to each of those charges. Paragraph two: The State does not oppose concurrent time to serve on the escape charge in the indictment mentioned in paragraph one above. Three: In order to properly advise the court, it is hereby agreed that all police reports, lab reports, autopsy report, all photographs except those photographs depicting a recreation of the shooting incident by the police officers, shall be stipulated into evidence and permanently made a part of the court file in the above-captioned case. It is also stipulated between the parties that all psychiatric reports likewise be stipulated into evidence for the sentencing judge to consider. Said psychiatric reports becoming a permanent part of the record in 75–199. The State shall be free to argue from the psychiatric reports in the sentencing brief discussed below. Your Honor, at this point I move to amend this by striking the word 'argue' and substitute the word 'discuss'. . . .

> Paragraph four: Pursuant to the Attorney General's policy which is applicable whenever, as in this case, the defendant pleads guilty in an open sentencing situation, the State shall make no recommendation as to the sentence Morgan is to receive on the charge of First Degree Murder and Escape as specified above. Paragraph five: The State shall be free and if it so chooses may file a sentencing brief with the sentencing judge. In the event such a brief is filed, it shall be divided into portions. The first portion setting forth the facts of the case taken from the items stipulated into evidence mentioned herein. And the second portion of said brief will be devoted to a discussion of the sentencing considerations mentioned in *Chaney* and other sentencing cases. In the event such a brief is filed, it shall be filed with the sentencing judge after receipt by the State of the presentence report but not later than five days prior to the sentencing date. Mr. Drathman will receive a copy of said brief also at least five days prior to the sentencing hearing. Paragraph six: At the sentencing hearing the State shall not call any witnesses, but the defendant may. The State shall make no sentencing comments. If the defense wit-

We think this dialogue between the court and the accused demonstrates that there was sufficient compliance with the requirements of Rule 11(c)(3)(i).

Despite the foregoing, Morgan would require the trial court to have advised him of the mandatory 15-year period he would have to serve upon his conviction of first degree murder before he would be eligible for parole under AS 33.15.080 if a life sentence was imposed.[35] Additionally, Morgan reads Rule 11(c)(3)(i) as requiring that he be advised that the sentencing court could fix parole eligibility beyond the mandatory 15-year period of actual incarceration in the case of a life sentence.

[8] Neither of these urged requirements are specifically mandated by the text of Rule 11(c)(3)(i). This portion of Rule 11 only requires that the defendant be informed of the mandatory minimum and the maximum possible punishment *"provided*

by the statute defining the offense to which the plea is offered."[36] AS 11.15.010,[37] which defines the offense of felony murder provides as to punishment that upon conviction the offender "shall be sentenced to imprisonment for not less than 20 years to life." AS 11.15.010 contains no reference to parole eligibility or to the sentencing court's authority to fix parole eligibility. Further, Morgan concedes that the Advisory Committee's notes to the parallel Federal Criminal Rule 11 indicate that in the federal system advising a defendant of a mandatory minimum parole term is not required.[38] Alaska's Rule 11 was intended to conform substantially to Rule 11 of the Federal Rules of Criminal Procedure. In short, in Alaska the trial court is not required to advise of parole minimums, or of its authority to fix parole eligibility, under the terms of Rule 11.[39] We thus conclude that none

nesses—strike that. If defense witnesses are called, the State preserves its right to cross-examine any such witness. Paragraph seven: Assuming the defendant, Donald Morgan, receives as a sentence substantial time to serve, the State agrees not to oppose, however, the State will not recommend concurrent time to serve as to any other charges which are presently pending. Substantial time means in excess of 50 years. Paragraph eight: Pursuant to conversations between Mr. Drathman and Mr. Balfe, the District Attorney in Anchorage, Mr. Balfe has agreed on behalf of the State and the State will advise the sentencing judge on the armed robbery charges that the Anchorage Police Department is not interested in consecutive time as to any pending armed robbery. Mr. Branchflower will so advise the sentencing judge prior to sentencing hearing. After consulting with the Attorney General, Mr. Balfe has agreed the State will not file habitual criminal violation against Mr. Morgan as a result of any guilty pleas entered to the charge of First Degree Murder, Escape or any of the armed robberies presently pending. With respect to the sentencing—Paragraph ten: With respect to the sentencing hearing on the armed robberies, the State, through Mr. Balfe has agreed not to file any briefs or make any comments other than to advise the court that the State does not oppose concurrent time as to the armed robbery charges. And also that the Anchorage Police Department is not interested in consecutive time to serve. It is agreed that the police reports in the pending armed robberies shall be stipulated into evidence for the sen-

tencing judge to review. It is also agreed that any and all . . . psychiatric reports which have been prepared to date shall likewise be filed with the sentencing judge in the armed robbery cases.

35. *See* note 15 *supra* for the relevant text of AS 33.15.080.

36. *See* note 7, *supra* (emphasis furnished).

37. *See* note 2, *supra*.

38. 8 Moore, Federal Practice ¶ 1101[4], at 11-10 (2d ed. 1977). While we do not deem it necessary for the court to inform the defendant of the possibilities with reference to parole, we do believe that it is preferable for a court to so inform the defendant, particularly if the court is imposing more than the minimum of one third of the term required to be served for eligibility for parole. *See* AS 33.15.080 and AS 33.15.230(a).

39. *Cf. Tafoya v. State*, 500 P.2d 247 (Alaska 1972) (Possibility of deportation after a plea of guilty is a collateral consequence of conviction, and defendant's ignorance of the possibility did not render his plea involuntary under Rule 11).

A series of recent federal cases have held that when conviction of crime requires, in addition to incarceration, that a mandatory special parole term be imposed, the court must inform the defendant of the mandatory parole term. *See United States v. Hamilton*, 553 F.2d 63, 64 (10th Cir. 1977), *cert. denied*, 434 U.S. 834, 98 S.Ct. 122, 54 L.Ed.2d 96 (1978); *United States*

of Morgan's substantial rights were affected by any asserted failures on the superior court's part to comply with the provisions of Rule 11. Therefore, in light of our holdings pertaining to the various specifications of error, we have concluded that Morgan's convictions of the crimes of first degree murder and escape should be affirmed.

### SENTENCE APPEAL

Morgan contends that his sentence to life imprisonment with eligibility for parole after service of 35 years imprisonment, is an excessive sentence for a variety of reasons. In Morgan's view, the sentencing court ignored the principle of reformation (or rehabilitation) in fashioning its sentence; there was no basis for imposing the maximum sentence when he was not the worst type of offender; and the superior court erred in failing fully to explain the sentence it imposed.

■ The offenses for which Morgan was convicted were murder in the first degree and escape. The pertinent facts relating to the offenses are as follows: On September 4, 1975, a police officer transported Morgan from the state jail annex in Anchorage to the Alaska Psychiatric Institute for the purpose of receiving dental care. Morgan's

handcuffs were removed after his arrival in the dentist's office. X-rays were taken and it was ascertained that Morgan would need immediate surgery on his impacted tooth. While the officer was telephoning to arrange surgery, Morgan escaped.

On September 8, 1975, at approximately 2:00 a. m., a security employee of Alaska General Alarm heard what appeared to be an attempted entry into a building located at 403 West 8th Avenue, Anchorage. The Anchorage Police Department was notified and at approximately 2:16 a. m. several policemen were dispatched to the Methadone Clinic.[40] After the officers arrived at the scene, they observed a pile of money on the living room floor after ascertaining that the front door had been forced open and was ajar. Upon checking one of the upstairs offices, it appeared that a desk in the office had been ransacked. The officer who was in the kitchen area then heard what appeared to be a gun shot coming from the outside. When the officer arrived at the west side of the building, he observed Officer Flora lying on his back on the grass facing a window. Officer Flora had been wounded in the right temple area of his head and was bleeding severely. The suspect was ordered to throw down his gun and give himself up.[41]

---

*v. Watson*, 179 U.S.App.D.C. 103, 106, 548 F.2d 1058, 1961 (1977); *United States v. Harris*, 534 F.2d 141, 142 (9th Cir. 1976). There is no mandatory parole term involved in the case at bar and the rationale of these federal cases appears to be that the mandatory parole term acts as a necessary addition to the minimum incarceration in any statement of what constitutes the minimum punishment provided for the offense. This is distinguishable from the case at bar.

**40.** Due to the fact that methadone is kept on the premises, federal law requires the premises to be absolutely secure. At the time of the homicide, the clinic was equipped with perimeter alarms and special ceiling microphones which permitted 24-hour monitoring by personnel at Alaska General Alarm's main office in Anchorage.

**41.** Reserve Officer Steve Wilcox gave this version of what occurred on the west side of the building:

One window was open and another window had the top pane broken next to the window latch. Officer Flora first checked the win-

dow that was open with gun in right hand and flashlight in left hand. About the same time Officer Flora started to look into the room, Officer Carter came into the room from the inside of the building. [This room was later identified as a bathroom.]

Officer Flora and Officer Wilcox then approached the window with the top pane broken next to the latch. [This room was later identified as a doctor's examination room and it was within this room that Morgan shot Flora and was later apprehended.] This window was closed but not locked. Officer Flora then proceeded to carefully look into the room and did not see anything. Officer Flora then put his gun barrel, pushed up on the window, just enough to get a grip. Officer Flora then put his gun into his holster and slowly opened the window as far as it would go. Slowly, with only his flashlight in left hand, he proceeded to check the inside of the room and was shot, propelling him backwards away from the building, landing on his back and he was bleeding from the head and mouth.

An officer then entered the doctor's examination room where the suspect was standing. Upon entering the room, the officer took Morgan into custody and frisked him.[42] Morgan was then handcuffed and taken to police headquarters where, after being advised of his *Miranda* rights, he admitted breaking into the Methadone Clinic to obtain drugs and also admitted the shooting of Officer Flora.

The record indicates that at the time these offenses were committed Morgan was approximately 23 years old. Despite his relative youth, Morgan has an extensive history of antisocial behavior. Morgan committed several acts of firesetting between the ages of 4 and 14, burning down two houses, one trailer and setting several grass and forest fires. Further, at the age of 13 Morgan persistently shoplifted. In 1970, Morgan was convicted of armed robbery. After appeal to this court, the armed robbery conviction was reversed because of an incorrect insanity instruction which was given to the jury. *Morgan v. State*, 512 P.2d 904 (Alaska 1973).[43]

In 1973, Morgan spent 40 days at the Alaska Psychiatric Institute because he had been found not guilty by reason of insanity for an armed robbery which was committed in 1971.[44] After his release from API, Morgan was employed at the Westward Hotel in Anchorage. While so employed, he stole approximately $50 a day by "manipulating the cash register." Later, while employed in 1974 as a clothing salesman for the Hub Clothing Company in Anchorage, Morgan stole several checks, forged and then cashed them.[45]

Shortly after being given a deferred prosecution in 1974, Morgan stole a wallet and was subsequently convicted of the crime of fraudulent use of credit cards which he had obtained from the stolen wallet.[46] For this offense, Morgan was given a term of 6 months to serve. At the time Morgan escaped from custody in 1975, he was being held on separate felony charges of burglary in a dwelling and armed robbery of an employee of the Traveler's Inn. The day after Morgan effected his escape from the dentist's office, he committed an armed robbery of an employee of Topper's gas station. Before Morgan was recaptured, he committed three additional armed robberies.[47]

Upon consideration of the foregoing, we think that the bulk of Morgan's sentence appeal arguments can be resolved rather summarily. First, it is clear that the sentencing court was fully justified in imposing a life sentence for the first degree killing of Officer Flora. Given the extraordinary gravity of the offense and Morgan's long and extensive record of violent and dangerous antisocial conduct, we believe the superior court cannot be faulted when it observed that Morgan "is certainly, if not the worst kind of offender, he is certainly

42. Evidence recovered from Donald Morgan's person consisted of (1) a checkbook containing several blank checks belonging to a Donald J. Balestrieri, the director of the Methadone Clinic, (2) a small box containing two vials of enzyme reagent (used by clinic personnel to determine the presence of heroin in urine), and (3) several nine millimeter live cartridges in Morgan's right front pocket.

43. Morgan served two years prior to this court's reversal of his conviction. Morgan was not retried on this armed robbery offense.

44. Morgan committed this robbery at the time he was serving his 1970 armed robbery sentence at a halfway house in Anchorage.

45. In July of 1974, Morgan was fined $25 for leaving the scene of an accident. Three months later, Morgan was charged with forging a check. Prosecution was deferred for one year. Morgan admitted having committed the forgery and agreed to repay the victim fully and undergo counseling.

46. According to the state, during 1970 Morgan was in the practice of buying stolen wallets from prostitutes in Anchorage. He paid a standard fee of $50 and was able to realize a considerable profit from credit cards in the wallets. He also sold illegal drugs.

47. Morgan confessed to these three armed robberies at the time he confessed to the killing of Officer Flora.

In his psychiatric report, Dr. Olivier states that Morgan told him he had committed some 40 armed robberies. However, Morgan's attorney at the sentencing hearing disputed the accuracy of Dr. Olivier's report.

one of the worst." In short, we think that Morgan's appropriate classification is that of the worst type of offender. *State v. Wortham*, 537 P.2d 1117, 1120 (Alaska 1975); *Galaktionoff v. State*, 486 P.2d 919, 924 (Alaska 1971); *Waters v. State*, 483 P.2d 199, 201–02 (Alaska 1971).

 Second, although our sentencing courts are enjoined to give consideration of the goal of rehabilitation in the formulation of sentences,[48] we think it clear from this record why the superior court, in determining the priority and relationship of sentencing goals, decided that there was slim hope for Morgan's rehabilitation. We cannot say that the superior court's ordering of priorities was clearly mistaken when consideration is given to the psychiatric information that was available at sentencing, as well as Morgan's past criminal conduct. Third, study of the sentencing proceedings leads us to the conclusion that there is no merit in Morgan's assertion that the superior court failed fully to explain the sentence it imposed.[49] On the contrary, the superior court set forth in considerable detail the reasons for its imposition of the particular sentence.

 The most serious aspect of Morgan's sentence appeal is found in his attack upon that portion of the first degree murder conviction which requires that he serve 35 years before he is eligible for parole. We are not persuaded that the superior court was clearly mistaken in fixing Morgan's eligibility for parole at the expiration of 35 years imprisonment. Considering the dangerousness and extensive history of Morgan's criminal behavior, our own independent review of the record does not leave us convinced that this facet of the superior court's judgment of conviction should be modified under the controlling "clearly mistaken" standard of appellate review.[50]

48. *See* Art. I, § 12 of the Alaska Constitution; *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970).

49. *See Andrews v. State*, 552 P.2d 150, 153–54 (Alaska 1976); *Perrin v. State*, 543 P.2d 413, 417–18 (Alaska 1975); and AS 12.55.075(a)(2). The case law and the statute cited emphasize the need for the trial court to give in open court

Morgan's convictions of the crimes of escape and first degree murder are affirmed. The superior court's sentences imposed upon Morgan for the commission of these crimes are affirmed.

and on the record its reasons for the particular sentence imposed.

50. *Post v. State*, 580 P.2d 304, at 309 (Alaska, June 9, 1978); *Cleary v. State*, 548 P.2d 952, 954 (Alaska 1976); *McClain v. State*, 519 P.2d 811, 814 (Alaska 1974).