**Duane Gene FERGUSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–10107.

Court of Appeals of Alaska.

Nov. 5, 2010.

Tracey Wollenberg, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

*OPINION*

MANNHEIMER, Judge.

In April 2004, Duane Gene Ferguson was indicted for furnishing drugs to a nineteen-year-old woman, C.W., and then engaging in non-consensual sexual penetration with her.[1] Both of these crimes are unclassified felonies.[2]

Through his attorney, Robin Koutchak, Ferguson negotiated a plea agreement with the State on the day that his trial was to begin. Under the terms of this agreement, the State dismissed the drug-distribution charge, and the sexual assault charge was reduced to third-degree sexual assault (engaging in sexual contact with a person who the defendant knows is incapacitated), a class C felony.[3] Ferguson agreed to plead no contest to this reduced charge, and he further agreed that the superior court would impose an aggravated presumptive term of seven years' imprisonment.

(Because Ferguson committed his offense in March 2004, his sentencing for third-degree sexual assault was not governed by Alaska's current presumptive sentencing laws, but rather by the 2003 version of AS 12.55.125(i). Under that statute, Ferguson faced a three-year presumptive term of imprisonment because he was a third felony offender. *See* AS 12.55.125(i)(4)(C) (2003).)

In January 2005, Ferguson appeared in front of Superior Court Judge Ben J. Esch for sentencing. Judge Esch stated that he had read the pre-sentence report, and that he was willing to accept the negotiated disposition of Ferguson's case. Toward the end of the sentencing hearing, after Judge Esch had sentenced Ferguson to the negotiated seven-year term of imprisonment, the judge informed Ferguson that he would not be eligible for good time credit against this sentence.

Judge Esch was referring to AS 33.20.010(a)(3), which declares that a defendant sentenced for a sexual felony is not eligible for good time credit against their sentence if they have previously been convicted of one or more sexual felonies. According to Ferguson's pre-sentence report, he had been convicted in 1996 of third-degree sexual assault for engaging in sexual penetration with a woman who was passed out or asleep.

In early March 2005 (*i.e.*, a little over two months after Ferguson was sentenced), Ferguson filed a *pro se* petition for post-conviction relief in which he alleged that he received ineffective assistance from his trial attorney during the negotiation of the plea agreement.

Specifically, Ferguson alleged that his trial attorney gave him incorrect information regarding two key aspects of the plea agreement: (1) falsely informing him that four years of his seven-year term of imprisonment would be suspended, and (2) mistakenly informing him that he would be eligible for good time credit against the three-year "active" portion of his sentence (*i.e.*, the portion that he would have to serve)—so that, if Ferguson behaved himself in prison, his actual time to serve would be only two years.

Ferguson's sister Cheree, who was apparently present during Ferguson's conference with his lawyer, submitted an affidavit supporting Ferguson's allegations. She de-

---

**1.** First-degree controlled substance misconduct, AS 11.71.010(a)(2), and first-degree sexual assault, AS 11.41.410(a)(1).

**2.** AS 11.71.010(c) (first-degree controlled substance misconduct) and AS 11.41.410(b) (first-degree sexual assault).

**3.** AS 11.41.425(a)(1)(B) (definition of the crime); AS 11.41.425(b) (classifying the offense as a class C felony).

clared that the trial attorney had indeed told her brother that his sentence would be three years to serve, and that he would be out of prison in two years because of good time credit.

Ferguson's mother Sophie also submitted an affidavit stating that she had talked to the trial attorney after the attorney's meeting with the prosecutor assigned to Ferguson's case. According to Ferguson's mother, the trial attorney told her that she had negotiated a deal in which Ferguson would serve three years, and that she (the attorney) thought that this was a favorable offer because Ferguson was likely to get seven years to serve if he went to trial.

The trial attorney herself submitted an affidavit in which she declared that she explained to Ferguson that he would receive a seven-year term of imprisonment, but she told him that only three years of this seven-year term would be presumptive, so that Ferguson would be eligible to apply for discretionary parole during the remainder of his sentence—*i.e.*, after he served the three-year presumptive portion of the sentence.[4] The trial attorney's affidavit did not address Ferguson's claim that she mistakenly told him that he would be eligible for good time credit against this three-year presumptive term.

Based on these conflicting affidavits, Judge Esch concluded that an evidentiary hearing was needed to resolve the claims raised in Ferguson's petition for post-conviction relief. The hearing was held on June 29, 2007.

At the evidentiary hearing, Ferguson's sister Cheree testified that she and her brother were waiting in the library of the courthouse on the first day of trial, during a recess in the jury selection process, when the trial attorney communicated two different plea offers to Ferguson. The first offer called for Ferguson to receive a seven-year sentence. According to Cheree, she and Ferguson agreed that this proposed sentence was too

high, and that it would be better for Ferguson to proceed with the trial.

After Ferguson rejected the seven-year offer, his trial attorney left the room for a few minutes and then returned with a revised offer: two years to serve. The trial attorney told Ferguson and his sister that the attorneys and the judge might describe the sentence somewhat differently in court, but that the sentence would really be two years to serve. After both Ferguson and his sister requested the trial attorney to confirm that Ferguson's sentence would really be only two years to serve, Ferguson accepted the plea bargain.

Ferguson took the stand himself and corroborated his sister's account of the negotiations. Ferguson testified that his trial attorney originally proposed a plea agreement that would have required Ferguson to serve seven years, but Ferguson rejected that proposal. Then, several minutes later, his attorney came back and offered a revised agreement. Under this new offer, Ferguson would receive a sentence of three years, but he would be out of prison in two years because of good time credit.

Ferguson testified that when he heard his sentence described in court as "seven years", he turned to his attorney and asked her what was going on. According to Ferguson, his attorney touched his wrist and, in so many words, told him not to worry.

Ferguson's trial attorney also took the stand at the evidentiary hearing. She corroborated some of the testimony already given by Ferguson and his sister—that the State's first offer was a seven-year sentence, and that Ferguson would not accept that offer. According to the trial attorney, Ferguson told her, "I can't do seven years. I'm not going to go for that."

The trial attorney testified that, after receiving Ferguson's negative response to this first offer, she spoke to the prosecutor again. The attorney stated that the prosecutor

4. Under the 2003 version of AS 33.16.090(c), a defendant who received an aggravated presumptive term of imprisonment was required to serve the non-enhanced portion of the sentence (*i.e.*, the normal applicable presumptive term) before becoming eligible to apply for discretionary parole. This statute declared that a defendant was deemed to have served the normal presumptive term "on the date [that] the unenhanced presumptive sentence is due to expire[,] less good time [credit] earned under AS 33.20.010."

"really wanted a deal" (*i.e.*, wanted a negotiated settlement of the case), so the prosecutor "was willing to come down to the three-year presumptive [term], and there would be aggravators that would [increase the sentence by] four years in addition to [the three-year presumptive term]."

Seemingly, the proposed sentence described in the preceding paragraph was *not* a reduction from the State's original proposal, but was rather the same seven-year term of imprisonment that Ferguson had already rejected. But in her testimony, Ferguson's trial attorney attempted to distinguish this second proposal from the first proposal by asserting that, under the second proposal, the first three years of Ferguson's sentence were "presumptive", but the additional four years were "completely discretionary". When Ferguson's new defense attorney asked the trial attorney what she meant by "completely discretionary", the trial attorney answered:

*Trial Attorney:* I mean—how I would have explained it to Duane [Ferguson]—and he knew the difference between "presumptive" and "discretionary" already—but "presumptive" would mean that you're going to serve [the] three years. You're going to serve three years. After that, the rest of the [jail] time, the four years that are going to be tacked on [because of the] aggravators, is going to be purely discretionary—at the discretion of the Department of Corrections.

. . .

I explained to him how the Department of Corrections works, where—you know, in certain instances, on sentences, they get to make the decision. And that a lot of those decisions are made based on the good behavior of the inmates. And I remember specifically pointing out to Duane that, in the past, he's had very good behavior when he's been incarcerated, and he seems to gain favor with . . . the guards. . . . I said [to him], "You know, Duane, you're not one of those people that fight . . . when you're in jail. You're not one of those obnoxious guys that . . . is really overbearing or anything like that. [So] you probably have a good chance of getting out right after the

three years." And he understood that, and . . . he was willing to go with that.

The trial attorney denied telling Ferguson that, by virtue of good time credit, he could get out of prison in two years. However, during this same discussion, the trial attorney again repeatedly declared that it was up to the discretion of the Department of Corrections whether Ferguson would be required to serve the final four years of his sentence (*i.e.*, the enhancement above the three-year presumptive term).

Here is the pertinent portion of the colloquy between the trial attorney and Ferguson's new defense attorney:

*Trial Attorney:* We didn't talk about good time credit prior to [the day of the scheduled trial, because] we'd been planning on going to trial right up until that morning.

*New Defense Attorney:* Well, when *did* you have that discussion about [the fact that Ferguson was ineligible for] good time credit, then?

*Trial Attorney:* . . . When we [*i.e.*, Ferguson, his sister Cheree, and the trial attorney] were in . . . the law library, . . . and we were discussing the pros and cons of whether . . . we should go forward with the trial, we talked about the flat three-year term. . . . When [the subject of good time credit] was brought up—if it was brought up—and I'm not sure that it was. I was just trying to rack my brain [as to] why he'd think that there was just two years to serve. . . . I would've told him that, no, there was no good time attached to his three years. That was a flat three-year presumptive term. So good time was not an issue.

. . .

I didn't think it was an issue. . . . We were talking about a flat three-year presumptive term.

. . .

*New Defense Attorney:* [A] three-year, flat presumptive term. Could you explain exactly what you mean by that? How you would've explained it to Duane Ferguson?

*Trial Attorney:* I already answered that question with [the prosecutor]. But if

you weren't listening, I'd be glad to repeat it. "Presumptive term" is what you have to serve. "Discretionary term" would be what [is] up to the Department of Corrections—of you serving the remainder of.

. . .

*New Defense Attorney*: And is that your impression of how things work, [Ms. Trial Attorney]? That when somebody has a seven-year sentence, that [the Department of Corrections] will just let them out after three years if they behave nicely?

*Trial Attorney*: Well, I'm not nearly as simplistic [*sic*] as you think I am. I—no. But after three years [of] presumptive term, the discretionary part of the term does pretty much work that way. It's been my experience, over the years, that clients who keep their nose clean and stay out of trouble get treated better, and they do get certain benefits. And being released early, or released to a work farm, or something like that, usually occurs.

. . .

*New Defense Attorney*: [So] you explained to [Ferguson], if I'm understanding you correctly, that there was a three-year presumptive term, and then there [were] four years which were somehow at the discretion of the Department of Corrections, whether or not they were going to make Duane serve that time?

*Trial Attorney*: Yes, that's accurate.

Because the trial attorney repeatedly asserted that the final four years of Ferguson's sentence were "discretionary", Ferguson's new defense attorney asked the trial attorney whether she was referring to the possibility that Ferguson might successfully petition the Parole Board for release on discretionary parole. But the trial attorney replied that this was *not* what she was talking about:

*Trial Attorney*: We didn't talk about parole boards. We talked about the Department of Corrections in general. We did not discuss about—we did not discuss parole boards, no.

*New Defense Attorney*: Well, if you didn't talk about parole boards, how did you talk about [Ferguson's] being released

from [prison] after serving three years of [his] sentence? Who was going to release him?

*Trial Attorney*: Generally, the Department of Corrections. I'm not sure—there's other—there's other things that the Department of Corrections can do besides putting someone through a parole board. There's other types of discretionary release. So, you know, what I focused on [when talking to] Duane was simply what I've talked about *ad nauseam* here: a three-year presumptive, the rest [of the sentence] was—the rest was going to be up to him.

I don't think [I] can make it any clearer to the Court. I didn't talk to him about parole boards.

Toward the end of the evidentiary hearing, when the parties summarized what they believed the testimony revealed, Ferguson's new attorney emphasized the fact that, when Ferguson's trial attorney described the final four years of Ferguson's sentence as "discretionary", the trial attorney had not been speaking of the possibility of discretionary parole. But Judge Esch disagreed with the new defense attorney's characterization of trial attorney's testimony: the judge declared that, in his view, the trial attorney's description of the sentence was the equivalent (in so many words) of an explanation that Ferguson would be eligible to apply for discretionary parole during the last four years of his sentence.

Judge Esch then changed the focus of the discussion by asking the new defense attorney to explain why she believed that the trial attorney's description of the parole process had been inadequate. In response, the new defense attorney argued that even if the judge's view of the testimony was correct—that is, even if the trial attorney's description of the sentence to Ferguson could be interpreted as an explanation that Ferguson would be eligible to apply for discretionary parole during the last four years of the sentence—the trial attorney's advice to Ferguson was incompetent because the trial attorney failed to explain to Ferguson that it was extremely unlikely that the Parole Board

would ever grant his application for discretionary parole release.

Here is the pertinent portion of the colloquy between Judge Esch and Ferguson's new defense attorney:

>*New Defense Attorney*: There is evidence that [the trial attorney] seemed to believe that this sentence was something other than it really was.... She believed that [after Ferguson served the] three-year presumptive term ..., that there was [then] four years that, somehow, [the Department of Corrections] was just going to let [him] go. And, from her testimony, there wasn't even a discussion of parole. It was just, "Oh, well, DOC can let you go"—which is ...

>*The Court*: Is that inconsistent with the parole process?

>*New Defense Attorney*: Yes. That's very inconsistent with the parole process. DOC doesn't just let you go.

>*The Court*: Well, no, no, no. There was a discretionary process thereafter, during those four years, at which he may be released.

>*New Defense Attorney*: Yes, there is such a thing as discretionary parole, [but the trial attorney] testified that she didn't discuss parole with him.

>*The Court*: No, she said she didn't discuss the Parole Board [with him]. She said she discussed the fact that DOC could discretionarily let him out during the four-year period, and I'm asking you, Do you believe that's an inadequate description of the parole process?

>*New Defense Attorney*: Absolutely.... I think it's not only inadequate, but grossly misleading to tell a man in his 40s, [who will stand convicted of] his fourth felony [and] essentially his second rape conviction, who has a homicide on his record, that, "Sure, you've got three years presumptive, and then they can let you out"—because that's not how the process works. In fact, he's in a worse situation than many [defendants], because he's not even eligible for good time [credit] or mandatory parole.... Somebody like Mr. Ferguson should be made aware [that], frankly,

there's not a snowball's chance in hell that they'd give him discretionary parole.

At the close of the evidentiary hearing, Judge Esch allowed the parties to file supplemental memoranda explaining their positions on the testimony presented. Two months later, after receiving these memoranda, Judge Esch issued a written decision denying Ferguson's petition for post-conviction relief.

In his written decision, Judge Esch found that Ferguson's trial attorney had accurately described the proposed sentence to Ferguson: a seven-year sentence, with eligibility for discretionary parole after the first three years. Here is what the judge wrote:

>[The trial attorney's] testimony [was] unequivocal as to what she told Mr. Ferguson about the terms of the [plea agreement]. The defendant would ... receive an aggravated presumptive sentence of seven years and would be eligible for discretionary parole after the first three years. While [the trial attorney] is apparently confused ... about some matters, her recollection of the central issue of [this] case is unwavering.... The evidence is most persuasive that Ferguson was ... aware that his sentence would be a presumptive term of three years, with parole eligibility thereafter, up to a maximum of seven years.

Judge Esch also rejected Ferguson's alternative argument—the argument that even if the evidence were interpreted as establishing that Ferguson's trial attorney discussed the possibility of discretionary parole release with Ferguson, the trial attorney still acted incompetently because she failed to tell Ferguson that parole release was extremely unlikely in his case. Judge Esch concluded that, as a matter of law, a defense attorney does not need to warn a client about the unlikelihood of successfully petitioning the Parole Board for discretionary parole release.

*Why we conclude that Ferguson received incompetent legal advice concerning the plea agreement*

■ When the State proposes a plea agreement in a criminal case, the defendant is entitled to competent advice from their

attorney regarding whether to accept the State's proposal. *Love v. State,* 173 P.3d 433, 436–37 (Alaska App.2007). If the defendant's attorney provides incompetent advice on an issue that is crucial to the defendant's decision whether to accept the plea bargain, and if, as a result of this incompetent advice, the defendant accepts the plea bargain when he or she otherwise would not have done so, this constitutes "manifest injustice" for purposes of Alaska Criminal Rule 11(h)(3), and the defendant is entitled to withdraw their previously entered plea. *Love,* 173 P.3d at 437.[5] In particular, a defendant is entitled to withdraw their plea if (1) the defendant was given incompetent advice concerning the nature of the sentence they would receive if they accepted the plea bargain, and (2) the defendant would not have entered into the plea bargain had they received accurate advice on this subject. *Knox v. State,* 130 P.3d 971, 973 (Alaska App.2006).

Judge Esch's decision to deny Ferguson's petition for post-conviction relief rested on two bases. The first basis of Judge Esch's decision was a finding of fact: the finding that, when Ferguson's trial attorney told Ferguson that the final four years of his proposed sentence would be "discretionary", the trial attorney was speaking of Ferguson's right to apply to the Parole Board for discretionary parole release during those four years. The second basis of Judge Esch's decision was a ruling of law: a ruling that, when a defense attorney seeks to persuade a defendant to accept a plea agreement by telling the defendant that he or she will have the right to apply for discretionary parole release, the defense attorney has no obligation to advise the defendant concerning the realistic chances that the Parole Board would grant the defendant's application for parole release.

For the reasons explained here, we conclude that the judge's finding of fact is clear-

ly erroneous, and we conclude that the judge's ruling of law is wrong.

*(a) The evidence fails to support the superior court's finding that the trial attorney's description of the proposed sentence was, in essence, an explanation that Ferguson would be eligible to apply for discretionary parole release during the last four years of his sentence*

■ As we have explained, the major contention raised in Ferguson's petition for post-conviction relief was the claim that Ferguson's trial attorney misdescribed the sentence that Ferguson would receive under the second proposed plea agreement. Ferguson claimed that his trial attorney mistakenly told him that the final four years of the seven-year sentence were completely "discretionary", and that the Department of Corrections would release him after only three years if he behaved himself in prison.

Judge Esch concluded that the trial attorney's description of these final four years as being "discretionary" was in fact accurate— that this description was, in essence, an explanation of the fact that Ferguson would be eligible to ask the Parole Board to release him on discretionary parole during the final four years of the sentence. The record does not support the judge's conclusion.

It is true that the trial attorney, in her pre-hearing affidavit, asserted that she told Ferguson that he would be eligible for discretionary parole during the final four years of his sentence. But when the trial attorney took the stand at the evidentiary hearing, she gave a different account of her conversations with Ferguson.

At the evidentiary hearing, the trial attorney testified that she told Ferguson that, after he served the first three years of his sentence, "the rest of the [jail] time, the four years that are going to be tacked on [because of the] aggravators, is going to be purely

**5.** The pertinent portion of Alaska Criminal Rule 11(h) reads:

(h) Plea Withdrawal.
. . .
(3) After imposition of sentence, the withdrawal of a plea may be sought only under AS 12.72. A defendant requesting post-sentence plea withdrawal must prove that withdrawal is necessary to correct a manifest injustice.

(4) Withdrawal is necessary to correct a manifest injustice whenever it is demonstrated that ... [t]he defendant was denied the effective assistance of counsel guaranteed by constitution, statute or rule[.]

discretionary—at the discretion of the Department of Corrections." The trial attorney also testified that she "explained to [Ferguson] how the Department of Corrections works"—that "in certain instances, on sentences, they get to make the decision. And that a lot of those decisions are made based on the good behavior of the inmates."

In her testimony, Ferguson's trial attorney repeatedly sought to distinguish a presumptive term of imprisonment from a "discretionary" term of imprisonment. Because the Alaska sentencing statutes do not define or refer to "discretionary" terms of imprisonment, Ferguson's new defense attorney asked the trial attorney to explain what she meant by that phrase. The trial attorney answered that "[a] 'presumptive term' is what you have to serve, [while a] '[d]iscretionary term' would be what [is] up to the Department of Corrections—of you serving the remainder of."

The trial attorney's answer led to the following colloquy:

> *New Defense Attorney* : And is that your impression of how things work, [Ms. Trial Attorney]? That when somebody has a seven-year sentence, that [the Department of Corrections] will just let them out after three years if they behave nicely?
>
> *Trial Attorney* : Well, I'm not nearly as simplistic [*sic*] as you think I am. I—no. But after three years [of] presumptive term, the discretionary part of the term does pretty much work that way. It's been my experience, over the years, that clients who keep their nose clean and stay out of trouble get treated better, and they do get certain benefits. And being released early, or released to a work farm, or something like that, usually occurs.
>
> . . .
>
> *New Defense Attorney* : [So] you explained to [Ferguson], if I'm understanding you correctly, that there was a three-year presumptive term, and then there [were] four years which were somehow at the discretion of the Department of Corrections, whether or not they were going to make Duane serve that time?
>
> *Trial Attorney* : Yes, that's accurate.

The above-quoted testimony does not appear to be a reference to parole release. Ferguson's trial attorney never mentioned the Parole Board. And, when the trial attorney explained the ways in which she thought the Department of Corrections might excuse Ferguson from serving the last four years of his sentence, her explanation included alternatives that clearly did *not* constitute early release from the service of the sentence—for instance, a prisoner reclassification to a low-security facility such as a "work farm".

Moreover, when Ferguson's new defense attorney offered the trial attorney the opportunity to clarify her vague references to the Department of Corrections' "discretion" to release Ferguson after he served the first three years of his sentence, the trial attorney expressly declared that she had *not* been referring to Ferguson's ability to petition the Parole Board for release on discretionary parole:

> *Trial Attorney* : [Ferguson and I] didn't talk about parole boards. We talked about the Department of Corrections in general. We did not discuss about—we did not discuss parole boards, no.
>
> *New Defense Attorney* : Well, if you didn't talk about parole boards, how did you talk about [Ferguson's] being released from [prison] after serving three years of [his] sentence? Who was going to release him?
>
> *Trial Attorney* : Generally, the Department of Corrections—*I'm not sure— there's other—there's other things that the Department of Corrections can do besides putting someone through a parole board. There's other types of discretionary release.* So, you know, what I focused on [when talking to] Duane was simply what I've talked about *ad nauseam* here: a three-year presumptive, the rest [of the sentence] was—the rest was going to be up to him.
>
> I don't think [I] can make it any clearer to the Court. I didn't talk to him about parole boards.

(Emphasis added)

We acknowledge that when Ferguson's trial attorney testified about the Department of

Corrections' supposed "discretion" to excuse Ferguson from serving the last four years of his sentence, some of her descriptions were so vague that they conceivably might be interpreted as oblique references to Ferguson's right to apply to the Parole Board for discretionary parole release. But given the trial attorney's testimony as a whole, it is clear that she was not referring to Ferguson's eligibility to apply for parole release. Rather, she was referring to some other supposed authority of the Department of Corrections to excuse Ferguson from serving the final four years of his seven-year sentence if Ferguson behaved himself well in prison.

Based on our review of the record, we conclude that Judge Esch's contrary finding is clearly erroneous. That is, we are "left with a definite and firm conviction that a mistake has been made".[6]

And given the fact that the trial attorney was not referring to Ferguson's ability to petition the Parole Board for release on discretionary parole, we conclude that the trial attorney gave Ferguson incompetent advice when she encouraged Ferguson to believe that he could avoid serving the last four years of his seven-year sentence by simply behaving well in prison.

The Department of Corrections (as distinct from the Parole Board) has no discretionary authority to simply release or excuse a prisoner from serving the full term of a sentence imposed by the superior court. Yet, according to the trial attorney's testimony, she told Ferguson that the opposite was true.

The trial attorney testified that she told Ferguson that the last four years of his seven-year sentence were "completely discretionary"—that those four years "[were] going to be purely ... at the discretion of the Department of Corrections". The trial attorney recalled that she "explained to [Ferguson] how the Department of Corrections works"—"[that] in certain instances, on sentences, they get to make the decision. And that a lot of those decisions are made based on the good behavior of the inmates."

The trial attorney "remember[ed] specifically pointing out to [Ferguson] that, in the past, he's had very good behavior when he's been incarcerated, and he seems to gain favor with ... the guards", so that "[he] probably [had] a good chance of getting out right after the [first] three years [of his sentence]."

After hearing this testimony, Ferguson's new defense attorney asked the trial attorney, "And is that your impression of how things work ... ? That when somebody has a seven-year sentence, [the Department of Corrections] will just let them out after three years if they behave nicely?" The trial attorney answered,

> *Trial Attorney*: [After Ferguson serves the] three years [of his] presumptive term, the [four-year] discretionary part of [his] term does pretty much work that way. It's been my experience, over the years, that clients who keep their nose clean and stay out of trouble get treated better, and they do get certain benefits. And being released early, or released to a work farm, or something like that, usually occurs.

A few minutes later, the trial attorney added, "[W]hat I focused on [when talking to] Duane was simply what I've talked about *ad nauseam* here: [he was to serve] a three-year presumptive [term], [and] the rest [of the sentence] was—the rest was going to be up to him."

The trial attorney's explanation of the proposed sentence agreement was a substantial mischaracterization of Alaska law and a substantial misrepresentation of Ferguson's status if he accepted the agreement. The trial attorney told Ferguson that, if he behaved himself, he could expect to serve no more than three years of his seven-year sentence. She told him that the length of his sentence "was going to be up to him"—not because of any possibility of parole, but because of the purported independent discretion of the Department of Corrections to grant early release to well-behaved prisoners.

This advice was incompetent.

(Alaska 2010).

*(b) Even if the record had supported Judge Esch's finding that Ferguson's trial attorney was merely explaining the fact that Ferguson could apply to the Parole Board for release on discretionary parole, Ferguson's case presents an instance where the trial attorney was required to explain Ferguson's realistic chances of obtaining discretionary parole release*

As we explained above, Judge Esch tentatively concluded (toward the close of the evidentiary hearing) that the trial attorney's discussions with Ferguson *had been* an explanation of Ferguson's eligibility to apply for discretionary parole after serving the first three years of the sentence. Judge Esch then asked Ferguson's new defense attorney if she contended that the trial attorney's explanation of Ferguson's parole eligibility was inadequate. The defense attorney responded that, even if the trial attorney's testimony was construed in this fashion, the trial attorney's explanation of discretionary parole release *was* inadequate—because the trial attorney encouraged Ferguson to believe that he would be granted parole release if he simply behaved himself in prison, whereas the truth was that Ferguson faced substantial obstacles in obtaining discretionary parole. (Ferguson was a mature offender with three prior felonies, including a prior sexual felony.)

In his written decision, Judge Esch concluded that even if it was unlikely that Ferguson would be granted discretionary parole, and even if the trial attorney failed to explain how unlikely it was that Ferguson would be released on discretionary parole, this did not constitute ineffective assistance of counsel. In reaching this conclusion, Judge Esch relied on this Court's decision in *Cole v. State,* 72 P.3d 322 (Alaska App.2003).

The defendant in *Cole* was charged with first-degree murder. His co-defendant accepted the State's offer to plead guilty to second-degree murder, but Cole rejected the State's offer, went to trial, and was convicted of first-degree murder.[7] Later, Cole filed a petition for post-conviction relief, alleging (among other things) that he received ineffective assistance of counsel because, even though his attorney advised him to accept the State's offer, she failed to tell him that he might be eligible to apply for discretionary parole earlier if he was sentenced for second-degree murder (as the State proposed) rather than first-degree murder.[8]

This Court held that the defense attorney was not required to advise Cole concerning his potential for parole release when she counseled him concerning the advantages and disadvantages of the State's proposed plea bargain.[9] We noted that when a court accepts a defendant's guilty plea, the court is not required to advise the defendant regarding the defendant's eligibility to apply for discretionary parole release.[10] We further noted that Cole had failed to cite "any persuasive authority" in support of his contention that his attorney was incompetent because she did not advise him about parole eligibility.[11] Nor had Cole asserted "that his attorney provided him with any misleading advice about the offered charge bargain or the consequences of his ... reject[ing] the charge bargain and go[ing] to trial on first-degree murder."[12]

We then declared "that an attorney is not required to advise a defendant about parole eligibility when the defendant is offered a charge bargain with open sentencing", and that "Cole's attorney was not required to provide Cole with an analysis of his potential for parole release when she recommended that he accept the charge bargain."[13]

Judge Esch apparently relied on these portions of the *Cole* opinion when he ruled that it made no difference whether Ferguson's trial attorney encouraged Ferguson to have unjustifiable hopes or expectations re-

---

7. *Cole,* 72 P.3d at 323.

8. *Id.* at 324.

9. *Ibid.*

10. *Ibid.,* citing *Morgan v. State,* 582 P.2d 1017, 1027 (Alaska 1978).

11. *Ibid.*

12. *Ibid.*

13. *Ibid.*

garding the possibility that he would obtain release on discretionary parole after serving three years of his seven-year sentence.

■ In retrospect, we see that our broad statements in *Cole* need clarification. While an attorney may be under no obligation to bring up the subject of parole eligibility when counseling a defendant regarding a proposed plea agreement, a defense attorney who *does* discuss parole eligibility with their client must not affirmatively mislead the defendant concerning their eligibility for, or their chances of obtaining, discretionary parole release.

As the Missouri Court of Appeals explained in *Moore v. State*, 207 S.W.3d 725 (Mo.App.2006),

> As a general proposition, ... defense counsel ... is [not] required to inform a defendant about parole in order for a guilty plea to be voluntary and intelligent; such information deals with a collateral, rather than a direct, consequence of the plea. Thus, counsel's failure to advise a defendant concerning eligibility for parole cannot give rise to a claim of ineffective assistance of counsel. A different rule [applies], however, if counsel provides erroneous advice about parole eligibility:
>
>> Where counsel misinforms a client regarding a particular consequence and the client relies on that misrepresentation in deciding whether to plead guilty, the distinction between direct and collateral consequences of the guilty plea is unimportant. If counsel affirmatively misrepresents a collateral consequence of pleading guilty, that misrepresentation may result in an ineffective assistance of counsel.

*Fogle v. State*, 124 S.W.3d 509, 511–12 (Mo.App.2004) (citations omitted). Under such circumstances, relief can be granted if: (1) the defendant was reasonably mistaken about when he or she would become eligible for parole; (2) the mistake was based upon a positive misrepresentation by counsel on which the defendant was entitled to rely; and (3) the defendant did rely upon counsel's misrepresentation in deciding to plead guilty.

*Moore*, 207 S.W.3d at 730 (citations omitted).

See also *Nicholson v. State*, unpublished, 2010 WL 1980190 (Tenn.Crim.App.2010), where the court granted post-conviction relief to a defendant whose trial attorney mistakenly informed him that, if he accepted the government's offer, he would be released after serving thirty percent of his sentence. The defense attorney "acknowledged that he 'probably did not' inform the [defendant] that sex offenders are not usually released on parole", and the Tennessee appeals court found that the prospect of the defendant's being released on parole "was highly unlikely". *Id.* at *19–20.

Given the defendant's testimony "that he would not have pled nolo contendere had he known he would have to serve the full sentence", the Tennessee court concluded that the defendant was prejudiced by his trial attorney's incompetent advice, and that the trial court erred in dismissing the defendant's application for post-conviction relief. The Tennessee court explained that, although "an attorney who merely fails to discuss parole eligibility with his client does not render ineffective assistance", an attorney's act of "[affirmatively] giving erroneous advice to a sex offender about [their] release eligibility" can constitute incompetent representation. *Ibid.*

*Accord*: *Hill v. Lockhart*, 877 F.2d 698, 699–700, 703 (8th Cir.1989), *affirmed on rehearing*, 894 F.2d 1009 (1990) (the defendant established ineffective assistance of counsel where the defendant made it clear that his eligibility for parole would be a major factor in his decision whether to accept a proposed plea agreement, and his defense attorney failed to even read the applicable parole statute—thus resulting in his giving mistaken advice to the defendant); *Tillman v. Gee*, 284 Ga. 416, 667 S.E.2d 600, 601–03 (2008) (the defendant received ineffective assistance when his attorney told him that he would be eligible for parole after serving a majority of his sentence, when in fact the applicable statute made the defendant ineligible for parole release).

 This same rule applies to Ferguson's case. Ferguson had already rejected the State's initial offer of seven years to serve. Ferguson's trial attorney encouraged him to accept the State's second offer—which was, again, a sentence of seven years—by emphasizing that Ferguson would not have to serve the last four years of this sentence if he behaved himself in prison. Even if Judge Esch was correct when he construed the trial attorney's statements to Ferguson as an explanation that Ferguson would be eligible to apply to the Parole Board for discretionary parole release during the last four years of his sentence, the trial attorney's advice to Ferguson appears to have been affirmatively misleading concerning Ferguson's realistic prospects for obtaining parole release.

If Ferguson accepted the State's plea agreement, he would be a fourth felony offender. Moreover, one of Ferguson's earlier felonies was a conviction for sexual assault stemming from his act of engaging in sexual penetration with an incapacitated teenage girl. In the superior court, Ferguson's post-conviction relief attorney asserted that, given these circumstances, there was "not a snowball's chance in hell that [the Parole Board would] give [Ferguson] discretionary parole". The State did not, and does not, seriously contest that assessment.

Yet, according to the trial attorney's testimony, she told Ferguson that if he behaved himself in prison, "[he] probably [had] a good chance of getting out right after the [first] three years [of his sentence]." When Ferguson's post-conviction relief attorney questioned this assertion, the trial attorney did not back down. Rather, the trial attorney declared that, in her experience, if a defendant behaves well in jail, the defendant will "usually" be granted early release after they have served the presumptive portion of their prison term.

A few minutes later in her testimony, the trial attorney added that she expressly advised Ferguson that, although he would have to serve the three-year presumptive portion of the sentence, "the rest [of the sentence] was going to be up to him." This was not

true—and, under the circumstances, this mistaken advice constituted ineffective assistance of counsel.

 The remaining question is whether Ferguson may have been prejudiced by this incompetent advice. If a defendant proves that their attorney was ineffective, the defendant then bears the burden of demonstrating at least a reasonable possibility that the attorney's ineffective assistance affected the outcome of the proceedings against the defendant.[14] Specifically, in cases that were resolved by a plea agreement, the defendant must show a reasonable possibility that they would not have agreed to the negotiated settlement of the case if they had received competent assistance from their attorney.[15]

Everyone who testified at the evidentiary hearing in Ferguson's case agreed that Ferguson unequivocally rejected the State's first offer of seven years to serve. Consequently, it appears that there is at least a reasonable possibility that Ferguson would not have accepted the State's second offer if Ferguson had understood that this second offer was essentially the same one he had just rejected. Ferguson's trial attorney convinced him that the second offer was materially more favorable to him by mistakenly and incompetently telling him that there was an excellent chance that the Department of Corrections would voluntarily release him from prison after only three years. Given this record, Ferguson established a reasonable possibility that he was prejudiced.

*Conclusion*

The judgement of the superior court is REVERSED, and the superior court is directed to grant Ferguson's petition for post-conviction relief. In other words, Ferguson is entitled to withdraw his plea. If he does so, the State may reinstate the original charges against Ferguson, and the parties will return to the positions they occupied on the day of Ferguson's scheduled trial.

---

**14.** *Risher v. State,* 523 P.2d 421, 424–25 (Alaska 1974).

**15.** *Garay v. State,* 53 P.3d 626, 628 (Alaska App. 2002).